HARRY SEARCY, by His Next Friend, Appellant, v. THE MARTIN WOODS COMPANY.

**Practice: Harmless Error.** An instruction which refers to a plaintiff, alleged to have been negligently injured as a trespasser, is harmless, whether plaintiff was a trespasser or not, where the same instruction requires of defendant a degree of care not due to trespassers.

SAME: NEW TRIAL: DISCRETION. Facts stated under which the refusing of a new trial sought for newly discovered evidence, was within the court's discretion.

*Appeal from Scott District Court.*—HON. C. M. WATER-
MAN, Judge.

### WEDNESDAY, JANUARY 23, 1895.

Plaintiff, a minor, prosecutes this action by his
next friend to recover of defendant, a corporation, dam-
ages for personal injuries sustained by plaintiff because
of alleged negligence of one of defendant's employes
while in the line of his employment.    Defendant
answers denying the alleged negligence.    The case
was tried to a jury, and verdict and judgment for
defendant.    Plaintiff appeals.—*Affirmed.*

*Hubbell & Hubbell* and *J. T. Kenworthy* for appel-
lant.

*Davison & Lane* for appellee.

Given, C. J.—I.    Appellant's first contention is
that the court erred in certain of the instructions given.
The following is a sufficient statement of the facts and
pleadings for an understanding of the questions pre-
sented:    On July 9, 1892, plaintiff, then a little over
five years of age, lived with and in the care of his par-
ents, near the yards of the Chicago, Rock Island &
Pacific Railway Company in Davenport.    On that and
prior days the defendant corporation, carrying on the
fruit business, was engaged, through its employes, in
loading bananas, from cars standing on the ground of
said railroad company in said yard, on to its transfer
wagons, to be hauled elsewhere.    It sometimes
occurred in handling the large bunches of bananas that
loose ones fell to the ground, and the overripe ones
were thrown out by defendant's employes.    Children
were in the habit of gathering about the wagon to get

the fruit thus dropped and thrown upon the ground. On said ninth day of July, one Gus Hamann was in charge of one of defendant's teams and transfer wagons being loaded with bananas from a car, the bananas being handed from the car by other employes to said Hamann, who placed them on the wagon. The plaintiff, Harry Searcy, had wandered from his home near by, and, with other small children, gathered about the wagon to get the bananas that might fall or be thrown to the ground. The wagon, while being loaded, stood along side of the car. Hamann knew of the presence of a number of children about the wagon at that time. When the wagon was loaded, Hamann passed from the top of the load to the high seat in front, and started the team. Plaintiff was run over by one of the hind wheels of the wagon, and seriously injured. As to these facts there is no conflict in the evidence, but there is a dispute as to where the plaintiff was at the time the wagon was started, and how and why he came to be run over. It is claimed, on behalf of the plaintiff, that he was standing close to the wagon; that he did not know that it was about to be started; and that it was suddenly and rapidly started, and he was caught. Appellee claims that plaintiff stood opposite, and some distance from the hind wheel that ran over him, at the time the wagon was started; that the starting caused a banana to fall; and that plaintiff attempted to get it, and was caught under the wheel. Because of the age of the plaintiff, there is no claim of contributory negligence, nor is there any question but that defendant was liable for the negligence of Gus Hamann, if any, in starting the wagon. The jury were properly instructed that the only question for them to determine was whether the defendant was negligent, and, if so, the amount of damages to which plaintiff was entitled.

II.  In the fourth paragraph of the charge the court, after stating that defendant was engaged in a lawful business, added that "the boys who came round about said wagon to get the bananas which might fall were trespassers; but the fact that the presence of said boys about said wagon was known to the servants of the defendant, who were engaged in loading said wagon, imposed upon such servants the obligation to use reasonable care in their work to avoid injury to said boys." In the fifth paragraph, after repeating that defendant's servants were required to exercise reasonable care to avoid injury to the boys, the court said:  "And the degree of care which would be reasonable you must determine from all the facts and circumstances in evidence in the case, taking into consideration the ages of said boys, and the apparent understanding, or lack of it, possessed by them."

It is contended in behalf of appellant that, under the circumstances, he was not a trespasser; therefore he complains of that part of the charge.  The statement that they were trespassers was not submitted as a matter of defense, and whether technically correct or not we need not determine.  The instructions are explicit as to the duty of defendant's servants to exercise a degree of care that they would not have been required to exercise towards actual trespassers. Complaint is made because in the sixth paragraph the court said:  "If you find that, at the time defendant's servant started said wagon in motion, the plaintiff stood quietly at one side thereof, far enough distant to be reasonably safe if he there remained," etc.  The claim is that there was no evidence that plaintiff did so stand.  We think differently.  There was not only evidence to warrant the instruction, but to warrant the jury in finding such to have been the fact.  A similar complaint is made against the seventh paragraph,

which, for the same reason, we think equally untenable. We regard the instructions throughout as a very full, clear, and correct presentation of the law applicable to the case.

III.  The verdict was returned February 15, 1893, and on the twentieth plaintiff filed a motion for new trial, which was overruled on the twenty-first, and judgment for costs entered against John L. Searcy, the father and next friend of the plaintiff. On March eleventh following, and during the same term of court, the plaintiff filed a second motion for a new trial on the ground of newly-discovered evidence, supported by the affidavit of Henry Bauman, the witness, as to what he knew of the accident, and of John L. Searcy as to the diligence exercised by him. Appellee moved to strike this second motion for new trial, which motion was overruled. The ruling being in favor of appellant, the correctness thereof is not before us for consideration. Appellee filed a counter affidavit showing that Bauman had made statements contradictory of those made in his affidavit as to the manner in which the accident happened. The motion for new trial was submitted upon these affidavits, and the court made certain findings of fact, which were made part of the record, and considered by the court in passing upon the motion for new trial. It appears from the findings of the court that John L. Searcy had brought an action in his own right, based upon this same alleged tort, against this defendant, to recover damages for the loss of service, expenses, etc., consequent upon the injury of his son; also that he had practically managed both cases; that the trial of the case by the father had followed immediately upon the trial of this case; and that in that case, as in this, the issue was as to the driver's negligence in starting the wagon. It further appears that upon the trial of this case, after

plaintiff rested, defendant moved for a verdict, after which plaintiff was permitted to withdraw his submission, and to introduce further testimony claimed to have been just discovered. Thereupon a boy who lived in plaintiff's neighborhood, and had been in the court room with plaintiff's witnesses during the entire trial, was called and examined. On the trial of the case in behalf of the father, his son Fred was examined for the plaintiff as to the manner in which the accident occurred, yet Fred, though living with his parents, was not examined in the trial of this case. On the examination Fred mentioned a boy named Bell as having witnessed the accident; whereupon, after all the witnesses for the plaintiff present had been examined, delay was granted to the plaintiff to get the witness Bell from Rock Island. The court, considering what had occurred in these cases, very properly held that there was not a sufficient showing of diligence. The court further found that, if Bauman would testify as set out in his affidavit, he would contradict every witness who testified for the plaintiff as to the situation of the plaintiff at the time the wagon was started, and as to the wheel which passed over him. The motion for a new trial was addressed to the discretion of the court, and we think it was entirely proper for the court to take into consideration the facts within its knowledge having transpired in the two cases. It is our conclusion that the court, under all the circumstances, was fully warranted in overruling both of plaintiff's motions for a new trial.—*Affirmed.*